Next case is number 23-1963, Peter Mancuso v. MDGUSA. Mr. Blaise, yes, may I reserve five minutes, your honor? Absolutely. Thank you. May it please the court, Greg Blaise for the appellant, MDGUSAINC. Your honors, turning first to the court's targeted questions about the application of The district court erred when it denied a motion to compel arbitration by MDG because the pleadings and the other documents supporting the motion showed that plaintiff had not presented a plausible objection to arbitration, and so it was error to deny the motion and order discovery. As the court is aware, under Guadatti, and we agree with the court, that this is the threshold, if not the dispositive question, which is whether Guadatti required the court to apply a 12v6 standard to this motion, and in doing so, whether it ought to have granted the motion and compelled arbitration. The answer to both questions is yes. The purpose behind Guadatti is to establish a balance between the FAA's requirement that courts deal with motions to compel arbitration speedily and before the parties invest considerable resources, and in doing so, it directs the courts to apply a motion to dismiss standard where the pleadings, not just the pleadings, but also supporting documents, don't show a plausible defense. Guadatti talked about, or used the term, a court's role as providing a speed break to the FAA. Yes. Is that something we should be concerned about in this case, especially because the magistrate judge who was handling this case, of his own motion, apparently wanted discovery and ordered it for whatever his purposes, since no one else requested it? No, no, Judge. The speed break that Guadatti envisions is a situation where the evidence and the pleadings and supporting documents connected to the motion show a defect, or where the opposing party, in this case the plaintiff, brings forward additional evidence that creates a plausible objection to arbitrability, and none of those preconditions for unlocking the door to discovery were present in the proceedings below. The court had before it the complaint, which alleges the existence of an agreement entered into around September 2020 to purchase a product from MDG, and it says that it's the only business that the plaintiff has transacted with MDG. Your argument is because there is an agreement pleaded by plaintiffs that that sinks plaintiff's argument because within that agreement is an arbitration clause. Right. But, if plaintiff had alleged that there is an agreement, except I never agreed to paragraph 35, then the case has to stay in court and discovery is required. You'd concede that, would you not? Yes, I concede that, but Your Honor, that is the biggest if I've ever heard in court. And, just to clarify my argument, it's the pleading and supporting documents, and in uncontested supporting documents. I think so, Your Honor. There was no allegation here that when you included the arbitration agreement in your motion that that was an inauthentic document or otherwise invalid? Correct. The authenticity has not been disputed, and because it's referred to, we think it, under the body of case law that has arisen with respect to motions to dismiss, it's incorporated as part of the pleading. As a secondary point, I think Guadagni envisions that a court might consider evidence outside of a pleading that has evidentiary value, but is not necessarily squarely within that, the type of documents that a court can look at on a 12 v. 6. But I don't think that the court needs to make that ruling here, because the complaint in this case fairly referred to the agreement. The agreement's authenticity is not in dispute, and when you compare the text of the agreement to the allegations in the complaint, they track closely. So that it's clear that the agreement is referred to and could be considered. If this had been a motion to dismiss, the court could have definitely considered that at the motion to dismiss stage. Can we derive any answer to the question from the very, very limited record we have? Why Judge Saperito wanted discovery? No, Judge. I, Judge Smith, I was surprised to get this order. I have filed these motions before. Before we have an agreement, the text of the, the text of the arbitration provision is clear. It doesn't have any indicia of unfairness of the sort that courts have rejected in the past. And then when you look at the order, it's not even granting leave to take discovery on the assertion that plaintiff's counsel made in the brief about an objection. It's to determine whether the court ordered discovery to determine whether the Pennsylvania statutory claims were subject to the arbitration clause. But the, the district court and this court on plenary review can look at the contract. It says that any statutory claim falls within the definition of claim and is subject to arbitration. So it's, it's, it's, it's clearly subject to the arbitration provision. And there's not, there's no credible objection to that provision. Let me linger on the reasons why there's no credible objection. There is, there is an assertion by counsel in the response brief that the, that two assertions. One is that the contract is invidiated with fraud and, and that there was a fraud in the inducement by a, by a misnumbering, apparently a, a discriminator's error, misnumbering the arbitrate, the number of paragraph that the arbitration provision was at. Neither, of course, the assertion by counsel is not evidence. And so that wasn't really part of the record that the court reviewed. But even if it had been presented as evidence, there are a number of reasons for why that would not constitute a plausible objection to use Guadagni's standard. The first is that that would only go to substantive unconscionability and the plaintiff would need to show both substantive and procedural unconscionability to raise a valid objection under the Harris case. Second, even if, even if the plaintiff could provide a testimony with evidentiary value that he was confused by the purported misnumbering of the arbitration provision, that would actually cut against a claim for fraud in the inducement. Fraud in the inducement is an incredibly narrow exception to a contract where you did not have the opportunity to review the contractual provision. The quintessential example is you go to the closing and the person is holding, the counter contracting party is holding their hand over the term. And they say, don't worry, you don't need to read that. We're going to cross that out later. And you, and your reliance on that is reasonable because that's one of the requirements. Then you sign. That, that is the kind of thing that could give rise to a fraud in the inducement claim. But if you, if you pull the lens back here, what you see is that this agreement, there's no question that the entire text of the agreement was shown to Mr. Mancuso. And to the extent he's, and he's charged with having read it and understood it. And to the extent he's saying after the fact, I was confused by it, that actually makes his signature on the agreement unreasonable and would deprive him of, of a valid fraud in the inducement claim. Also again, pulling the lens a little further back, the, the assertion is that my client, because of course, to prove fraud in the inducement, you have to show an intentional act by the fraudster, the alleged fraudster, along with a reasonable reliance. When you look at the assertion, it's that my client intended to deprive the plaintiff of the ability to understand the provisions of the arbitration term by providing the entire text of the arbitration term in the agreement with, with, and having built it out with all of the substantive and procedural protections that courts require for arbitration agreements. With the one exception of a, of a misnumbering, I'm, I'm not aware of any case where a fraud, a plausible, much less a possible fraud in the inducement claim has been pled in a situation where the contracting party was shown the term. There's also a suggestion that the interest rate calculation constitutes fraud. Again, none of this is pled in the complaint. Well, that might be true, but your point is the arbitrator has to decide that. Exactly, Your Honor, under the Prima Payne case. I should give you a heads up that the clock never reset. You reserved five minutes for rebuttal, I think, right? I did, Your Honor. All right, so you still, you have one minute left instead of six because the clock never reset. I want to make sure I'm fair to Mr. Schaffer. I appreciate that, Your Honor, and unless the court has other questions, I will be back for rebuttal. Okay. All right. Thank you. Thank you. Well, then, you saved an extra minute. Thank you. Mr. Schaffer, welcome. May it please the Court, John Schaffer on behalf of Peter Mancuso, 28% is not 41%. At the end of the day, that's what this case boils down to. Most of the fraud that has been talked about has been the misnumbering on the arbitration claim. That is certainly a piece of misrepresentation that would make it difficult to opt out, but realistically, the inducement of this contract to begin with ... The crux of your claim is that they lied about the interest rate your client would have to pay. Correct, Your Honor. He entered an agreement under the understanding ... And you might win on that, but doesn't the arbitrator have to give you that victory, not the court, because your client signed a contract that says that the claim that you've made goes to arbitration? No, Your Honor, because at the end of the day, that arbitration clause is induced in the agreement as a whole. He's entering this agreement for a 28% interest rate, and that is not the agreement that he is receiving. What clause has the 28% interest rate? Tell us a little bit. Let's go into the document. Where's the 28%? Where's the 41% in the document? Absolutely, Your Honor. It's page 14 of the appendix, and it states in the Truth in Lending ... What paragraph are you in? I'm referring to the Truth in Lending disclosure in the beginning. It states in the Truth in Lending disclosure that it will be an annual percentage rate for purchase of 28.95% APR. Part of the purpose of having this type of box in Truth in Lending disclosures is so that a person is capable of looking at this and understanding what their percentage is going to be in order to agree to this agreement. When you move down to the section below on how they're calculating balances, it states that there's a daily periodic rate of 0.115%, and when you calculate a daily periodic rate of 0.115%, you end up with a 41% APR, which is what was being charged to my client. When we initially ... All right, so let's assume you're correct about that. Let's assume that a normal consumer reading this agreement would think, well, 28% is kind of high, but I need the computer, so I'm going to do this deal. Your argument is they lied because it wasn't 28%, it was 41%. But tell me how a reasonable consumer who was reading paragraph 35 entitled Arbitration of Disputes could misunderstand that a case like this would have to go to arbitration unless under subsection B, within 30 days, your client opted out of arbitration. Well, in two pieces. One, every piece of this agreement is entered into under this understanding of 28% APR. That is what he ... So your argument is that if it was 28% was the real rate your client was willing to arbitrate, but if it's not 28%, he's not willing to arbitrate. In part, in that he is bargaining for 28%. What he is receiving on the other hand is not ... I'm granting you that. I'm granting you that he bargained for 28 ... For purposes of this argument, I'm granting you that he bargained for 28, they lied, it was actually 41, they are liable. I'm granting that for purposes of this argument. But I'm pressing you on how does that shed any light on whether he was told in writing, in all capital letters, that a dispute like an interest rate dispute as the one you're bringing needs to go to arbitration unless he opts out. Well, if you look at the last line of that section, it states the scope of the arbitration provision is to be given the broadest possible interpretation that is enforceable. A contract as a whole, when it is void, is not enforceable, nor would the individual provisions, including the arbitration provision, be enforceable. I'm sorry, where was that enforceable language you were reading from? In section 35A. 35A. The very last line. Oh, at the end of 35A, got it. So what's your argument again on that? Is that the agreement as a whole is not enforceable, that no provision of the agreement would be enforceable based on the misrepresentation. But isn't that contrary to case law because there are all kinds of cases that say there could be all kinds of problems with agreements like this one, but if the arbitration was not entered into, the agreement to arbitrate wasn't entered into fraudulently, unknowledgeably. Sometimes the arbitration agreement is put in some sort of, buried in an ancillary document, not in the main contract. There are cases in our legion that say that we courts are supposed to consider the question of arbitrability separate from the enforceability of all the other provisions of the contract. Am I incorrect on that? I'm happy to be corrected if I am, but that's my understanding. I think most of these cases that I'm reading are distinguishable from this. Take the case that's cited on this that I think is kind of the main case that's cited on these, which is Prima, right? Prima Payne, yeah. Prima Payne. In that case, they were stating that the inducement by fraud was not going to be considered, that fraud was going to be something that would have to be considered by arbitration. But when you look at that case, it was not an issue in the agreement itself. It was an issue in fraud and misrepresentations that happened outside of the agreement. I mean, when you look at this, maybe another way to consider this separate from a void contract is whether or not there even is a contract or agreement, because realistically, you have two parties who are coming together who are not in agreement on what the terms are. One side of the story is my client is entering an agreement for 28% while the other side is... Now, you have me really confused because I thought your complaint was your client signed a contract and the contract is invalid because they lied about the interest rate, but now I hear you saying that you don't have a contract at all? I'm saying that there are two separate ways that you could look at that when you're looking at it based off of the exact same fact. I understand that in the abstract, but how are you looking at it and how did you plead it in your complaint on behalf of your client? I plead it based off of the fraud, which I think is more direct on this. What I'm saying is reading what... But the fraud... But I thought, again, correct me if I'm wrong, I thought your fraud argument was that they fraudulently induced your client because they lied about the interest rate. Correct. But... What... Anything else about the document that they fraudulently induced or lied to your client about? I do believe that there are misrepresentations regarding the arbitration clause itself in terms of the ability to opt out and the understandability of it. Okay, what are those? So if you look towards, again, referencing to Section A, it states that in order to opt out, you would have to follow instructions under Section 34B. Not only is there not a Section 34B, but Section 34 is a force majeure clause. So an individual looking at this agreement, who even intended to opt out, would be inability... Inable to do so following that set of instructions, which poses a specific difficulty in doing so. At the end of the day, when you look at this ruling and you look at Guadagni, what we're looking at is whether or not there are sufficient challenges to the arbitration such that there should be limited discovery on those issues. What discovery do you want? What do you think you... What do you hope to find in discovery? Additional discovery to show fraudulent... To show the fraudulent inducement. I didn't think he wanted any discovery. So I don't think that it's necessary because I think that on the agreement itself should be sufficient. That's different from saying, I don't want any. Did I misunderstand your position previously? In part. It's not that I don't want any. It's why we did not file an appeal on the lower court's ruling. It's not that we don't want any. It's that I don't... I think that what we have is already sufficient, which is what I had wanted the court to consider, is that I think... That you don't need any. Correct. 28% does not equal 41%. And that is the basis of what my client entered all of the agreement for. But wouldn't you need discovery... You made an argument that actually is separate from the interest rate argument. You just said a minute ago that in paragraph 35, there are misnumberings. There's a reference to paragraph 34, which obviously has nothing to do with arbitration. Force majeure is a totally different issue, right? Yes, Your Honor. And as well... So you made an argument that that apparently fraudulently induced or confused your client into arbitrating. And you said also that it prohibited your client from opting out, right? Yes, it would pose difficulties to do it. All right. So don't you need discovery on that? Don't you need... Doesn't there need to be testimony to the effect of, you know, I read paragraph 35 and I don't want to arbitrate. I'd rather be in court, but I didn't know how to opt out because when it told me how to opt out, it put me up into this other section and that's a word... I don't know. That's a foreign language and I don't even know what force... Don't you need that kind of discovery to prevail? To be successful on that argument, absolutely. I think that... But you just told Judge Smith you don't need discovery. The other argument that we have is that he's induced to enter all of these provisions based off of the 28% APR. That is why he's making an agreement. That is not what he's receiving. There's no agreement realistically between the parties when you boil it down because what he is trying to agree to in this is a 28% and that's not, when you're reading the agreement, what was ever on the table. What was on the table was a .115% daily periodic rate. I mean, when we had initially filed this case, we did not have a copy of this agreement. We filed this case based off of the amounts that we were calculating out. Right, but then you got the agreement. And when we got it, we were able to then realize that the issue was not just that... Did you amend? We had not amended yet because this arbitration motion had already been filed and we had discussed that it would be smarter to resolve the arbitration issue prior to... Well, that's risky though because if you amended, which is freely granted, that might have given you a stronger footing to avoid arbitration. So we could have amended to add in the fraud arguments, but we were already addressing these as part of the argument as opposing counsel have stated, the document is functionally incorporated into the arguments that we're doing. So having amended would have made the claims a lot more clear, but wouldn't have fundamentally changed the arguments for the basis of arbitration. All right, and again, to make sure I understand your argument, the problem is the interest rate. It's not 28%. It's 41%. If it had been 28, your client understood he was headed to arbitration, but because it's 41 and they lied about the interest rate, you're entitled to a jury trial rather than arbitration. That all of the provisions then of the agreement would be void, which would include the arbitration. I see. Okay. Thank you for that clarification. So the lie that we're talking about on the interest rate pollutes the whole document for lack of a more genteel way of putting it. Is that your argument? Yes. The fact that he was agreeing for a 28% interest rate, that is not what the other side was actually offering. There is not a meeting there and it was induced by fraud, which ultimately makes each provision of the agreement void. Void or voidable? Void. All right, so your argument is because they lied about the interest rate, every other provision of the agreement is void. Yes, because that is fundamentally what is being agreed to. Every other provision realistically in there is a provision that is benefiting them regarding how the accounts are used, their ability to cancel the accounts, how you have to pay afterwards. What he's getting out of all of this is a 28% interest rate, which is not what he got, which is not what the basis of the agreement was. We have no further questions. You still have time if you'd like to make any other points. Not saying you're supposed to, I'm just giving you the chance. No, I would only say that looking at the lower court's ruling, you had posed the question of why he wanted discovery, and I believe it is exactly on these issues so that we can look at everything that's on there. You do want discovery. So I think that you can have a ruling on the sufficiency without, but to the extent that the one argument we have would not be sufficient already, discovery would be useful in fleshing out the remainder of the arguments. So if the court is not going to solely reject his motion based off of the record here using a summary judgment standard, then it would be appropriate to give the parties time on the arbitration issues. So do we vacate and remand for further proceedings, which would be your request for specific discovery, limited discovery? Yes, Your Honor. At this point, I think in reviewing everything and in going back and forth on the arguments thus far, I do think that upholding their ruling makes the most sense. Although if the court, looking at the record, looking at these interest issues, is capable of applying a summary judgment standard on the evidence that's already here, I do believe that that would cut against appellant on this, and I do think that it would be dismissed on that basis. To the extent it's not, which is what I believe the lower court judges like it was, is that we would need additional discovery to do that, then the additional discovery should be granted. And that's realistically what Wadati was seeking out, is when there are valid claims, there should be additional discovery in seeking that. I believe there are valid defenses that are raised on this. All right. Thank you very much, Mr. Schaffer.  We'll hear rebuttal from Mr. Blais. I, barring questions from the court, I predict I will not take all of the time, but I appreciate it, Your Honor. I just want to make three quick points. I've been looking through the complaint during Mr. Schaffer's presentation, and I'm not finding allegations of fraud that would satisfy Rule 9b. And that's key under Gwadati, because the court is looking at the pleading and the supporting documents, and the only other supporting document was the contract. So, again, we have assertions of fraud that if they are there on an amended pleading, will be taken up in the appropriate venue, which will be in front of the arbitrator. The second point is, I heard the argument distinguishing Prima Paint, and I'm not aware of any cases that adopt that. Rather, I think we routinely see situations where someone has, unlike this complaint, has alleged a fraud in connection with a substantive term in a contract, not with the arbitration provision, and courts send those to arbitration all the time. The last point is that I don't think Gwadati contemplates giving a second chance to build a record in the district court, particularly where this court has plenary review. And my final observation is that they say that brevity is the soul of wit. So I will conclude there, unless the court has other questions. And I ask that the court reverse the order of the district court in order for the matter to be arbitrated. Well, we are very grateful to both of you for not using all your time. That rarely happens in this tribunal. Thank you. And I want to thank Mr. Blaze and Mr. Schaffer for the very helpful oral argument. The court will take the matter under advice.